## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

ROBERT F. ALMEIDA and ROBERT    :
F. ALMEIDA as the assignee of JASON   :
JOSEPH.,                                          :

               Plaintiffs           :
       -v-                           :
                                         :      08 Civ. _____ ( _ )
THE UNITED STATES DEPARTMENT   :
OF HOUSING AND URBAN              :
DEVELOPMENT, and THE HON.         :      08 CIV. 4582
ALPHONSO JACKSON, as Secretary     :
of the United States Department of      :
Housing and Urban Development.,      :      JUDGE ROBINSON
                                         :

             Defendants         :
                                         :

### COMPLAINT IN A CIVIL ACTION

1.     Plaintiffs ROBERT F. ALMEIDA and ROBERT F. ALMEIDA as the assignee of Jason Joseph bring this action seeking injunctive, monetary and other just relief as and against the defendants, the UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and the HON. ALPHONSO JACKSON, as Secretary of the United States Department of Housing and Urban Development. In furtherance thereof, Plaintiffs allege, by and through its counsel LYNCH SCHWAB, PLLC, the following upon information and belief as follows:

**Introductory Statement**

2.     This is a civil action which arises from the foreclosure sale of the property and licensed adult home located at 51 Mountainview Avenue in Nyack, New York (hereinafter referred to as "Tappan Zee Manor"). The plaintiff, Robert Almeida (hereinafter referred to as Almeida) and Jaison Joseph were the successful bidders at a mortgage foreclosure sale auction that was conducted by the United States Department of Housing and Urban Development (hereinafter "HUD"), in March of 2002 pursuant to Section 365 of the Multifamily Mortgage Foreclosure Act of 1981, and in accordance with the provisions of 12 U.S.C. Section 1701 *et. seq.* HUD accepted the bid of the plaintiffs. In accordance with federal law, HUD duly appointed a foreclosure commissioner to facilitate the real property closing and the foreclosure sale.

3.     However, HUD was unable to deliver title to the plaintiffs, thus failing to abide by the provisions of the National Housing Act, the Multi-Family Mortgage Foreclosure Act of 1981 and the legally binding agreements entered into between the PLAINTIFFS and HUD. Rather than deliver title, as is required by law, HUD without justification and in an arbitrary and capricious fashion charged the plaintiffs certain "extension" fees to adjourn the closing date. These fees were charged to the PLAINTIFFS by HUD despite the PLAINTIFFS ability and willingness to close and complete the sale, and HUD's inability to deliver title to Tappan Zee Manor in a timely fashion. The reason for the delay in the closing of Tappan Zee Manor was due to the actions and inactions of HUD. The decision by HUD to charge the PLAINTIFFS with the "extension" fees was a direct breach of the various agreements entered into between the parties and in direct violation of the National Housing Act and the Multi-Family Mortgage Foreclosure Act of 1981.

**Jurisdiction and Venue**

4.     This Complaint alleges violations of the National Housing Act, Multifamily Mortgage

Foreclosure Act, Federal Tort Claims Act and state common law causes of action based upon breach of contract. Furthermore, the plaintiffs herein seek declaratory relief and equitable relief. All claims raised herein are based upon a common nucleus of operative facts, and the entire action commenced by this Complaint constitutes a single case that would ordinarily be tried in one judicial proceeding.

5.      This Court has subject matter jurisdiction over the federal claims raised herein pursuant to 28 U.S.C. §1331. The defendants have waived sovereign immunity as to each and every claim raised herein by the PLAINTIFFS.

6.      This Court has jurisdiction over the state law claims raised herein pursuant to 28 U.S.C. §1367, as those claims are related to the federal claims and they form part of the same case or controversy.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391 (e), as a substantial part of the events giving rise to the claims arose in this District, and further that the real property which is the subject of this action is situated in this District.

## The Parties

8.      The Plaintiff, ROBERT F. ALMEIDA (hereinafter "ALMEIDA"), at all times relevant herein, is and has been a citizen of the United States of America, and more particularly a resident of Westchester County, State of New York.

9.      Upon information and belief, Jaison Joseph (hereinafter "Joseph"), at all times relevant herein, is and has been a resident of Westchester County, State of New York. Joseph, as is set forth more particularly herein, assigned any and all relevant and appropriate interests to ALMEIDA.

10.     The plaintiff ROBERT F. ALMEIDA, as the assignee of Jaison Joseph, (hereinafter

collectively referred to as "PLAINTIFFS") commences this action as the recipient of an assignment from Joseph, whereby Joseph assigned to ALMEIDA any and all claims or interest in the bid for the Tappan Zee Manor property, and any and all claims or interest in any and all extension fees paid to HUD, as well as any and all rights he has under federal, state or local law to recover the same.

11.     The defendant HUD, is an agency and executive department of the government of the United States of America, and maintains its principal office in Washington, D.C.

12.     The defendant, the Hon. ALFONSO JACKSON, (hereinafter referred to as "SECRETARY") was at all relevant times, the Secretary of the United States Department of Housing and Urban Development. SECRETARY is named as a defendant in this action in his official capacity only, and by virtue of his duty and official responsibility to head and or direct HUD.

## Factual Allegations and Relevant Background

13.     On or about March 21, 2002, HUD through its agents and/or representatives, conducted a foreclosure sale of Tappan Zee Manor, which was offered for sale at foreclosure at the Rockland County Courthouse in New City, New York.

14.     In accordance with the foreclosure sale, HUD through its agents and/or representatives accepted from prospective bidders, among other things, a written bid to purchase Tappan Zee Manor, or oral bids to purchase from prospective purchasers that were present themselves or through their agents.

15.     PLAINTIFFS submitted a bid, in accordance with the foreclosure sale procedures of HUD for the purpose of purchasing Tappan Zee Manor.

16.     In accordance with HUD procedures, the PLAINTIFFS were either the "high" or

4

"second-high" bidders.

17.     HUD accepted the bid of the PLAINTIFFS, and the PLAINTIFFS were the successful

bidders at the foreclosure sale of Tappan Zee Manor.

18.     As such, on or about April 26, 2002 following the foreclosure sale, PLAINTIFFS

executed the "Terms and Requirements of Foreclosure Sale-Acknowledgement of Bidder"

whereby it was agreed that the PLAINTIFFS as equal partners would purchase Tappan Zee

Manor.

19.     The conditions of the "Terms and Requirements of Foreclosure Sale-Acknowledgement

of Bidder" provided that PLAINTIFFS obtained the successful bid of six million fifty thousand

dollars ($6,050,000.00) for the purchase of Tappan Zee Manor.

20.     As was required by HUD, on or about April 26, 2002, PLAINTIFFS submitted an earnest

money deposit in the amount of seventy-five thousand dollars ($75,000.00) to HUD through its

agents and/or representatives.

21.     In accordance with the "Terms and Requirements of Foreclosure Sale-Acknowledgement

of Bidder", HUD covenanted and otherwise agreed and promised to close title within thirty (30)

days of the execution of the "Terms and Requirements of Foreclosure Sale-Acknowledgement of

Bidder". Further, it was contemplated and agreed by and between the parties that HUD would be

able to deliver and/or convey title to Tappan Zee Manor to the PLAINTIFFS in a timely fashion.

22.     The "Terms and Requirements of Foreclosure Sale-Acknowledgement of Bidder" was a

legally binding agreement entered into between the PLAINTIFFS and HUD.

23.     The procedures of the foreclosure sale and the transfer of title were set forth in the

"Foreclosure Sale" Agreement that was prepared by HUD.  The aforementioned "Foreclosure

Sale" Agreement was a legally binding agreement entered into between the PLAINTIFFS and

HUD.

24.     HUD, through its agents and/or representatives scheduled an initial closing date of June 14, 2002.

25.     However, HUD failed to close title in accordance with the "Terms and Requirements of Foreclosure Sale-Acknowledgement of Bidder". The failure to close was due to the actions of HUD, and not due to any action or inaction on the part of PLAINTIFFS.

26.     HUD, through its agent and/or representatives could not deliver title to Tappan Zee Manor to the PLAINTIFFS on the date of the initial closing of June 14, 2002, because of defects in the title to Tappan Zee Manor.

27.     In preparation of the closing, PLAINTIFFS caused a title abstract company to conduct a search of the title to Tappan Zee Manor. This search revealed several irregularities in the title. These irregularities prevented HUD from delivering the title to Tappan Zee Manor in a timely fashion as agreed by the parties and as was required by law. These defects should have been remedied by HUD prior to the initial closing date, and the failure to do so caused harm to the PLAINTIFFS and was in violation of the various agreements and federal law.

28.     More particularly, some but not all of the concerns raised were (a) whether the HUD appointed foreclosure commissioner had the statutory authority to issue the foreclosure sale prior to acceptance of his designation and recording the same with the county clerk; (b) whether the mortgagor had been properly divested of its interest in the property; (c) whether federal tax liens had been discharged on the property; and (d) whether other business entities with recorded interests in the property were properly served with the foreclosure documentation.

29.     Such irregularities in the title to Tappan Zee Manor would prevent HUD from delivering title in accordance with federal law, and pursuant to certain legally binding agreements entered

into between HUD and the PLAINTIFFS.

30.     Prior to the initial closing date of June 14, 2002, the PLAINTIFFS advised and placed on notice HUD, through its agents and/or representatives that title could not be delivered in accordance with federal law and that HUD had failed to comply with applicable federal law.

31.     As such, the initial closing date of June 14, 2002 was adjourned.

32.     The adjournment of the initial closing date was necessary as HUD could not deliver title in accordance with federal law.

33.     Following the adjournment, on or about June 19, 2002, HUD demanded that the PLAINTIFFS pay an "extension" fee in the amount of one hundred six thousand and five hundred ninety dollars ($106,590.00) to be remitted no later than June 21, 2002 to avoid HUD declaring the bid in default.

34.     HUD demanded such "extension" fee from the PLAINTIFFS despite HUD's failure to comply with appropriate federal law in being able to deliver title to the property, and in failing to remedy clear and already articulated defects in the title to Tappan Zee Manor.

35.     In an effort to maintain the status quo, and to protect the successful bid, PLAINTIFFS remitted the funds necessary to satisfy the "extension" fee, but made such payment "under protest".

36.     On or about June 20, 2002, HUD was once again advised in writing of the defects in the title, the inability of HUD to comply with appropriate federal law, and the failure to be able to give title to the PLAINTIFFS in accordance with federal law.

37.     Despite the clear record, HUD unduly and unreasonably failed to refund the "extension" fee paid by the PLAINTIFFS.

38.     HUD unilaterally scheduled a second closing date for July 14, 2002.

39.     However, on July 14, 2002, HUD was still unable to deliver title in accordance with federal law.

40.     HUD adjourned the second scheduled closing of July 14, 2002.

41.     On or about July 15, 2002, HUD unreasonably demanded that the PLAINTIFFS pay a second "extension" fee in the amount of fifty six thousand eight hundred forty eight dollars and no cents ($56,848.00).

42.     HUD demanded that the PLAINTIFFS make such payment, despite HUD not be able to deliver title to the Tappan Zee Manor property prior to the closing date of July 14, 2002.

43.     Despite the clear record, HUD unduly and unreasonably failed to refund the "extension" fee paid by the PLAINTIFFS.

44.     On or about July 17, 2002, HUD without justification cut short the closing extension time and unilaterally scheduled a closing date of July 31, 2002.

45.     HUD, without justification or even a reasonable basis, further declared that in the event that the closing were not to take place by the July 31, 2002 closing date, the PLAINTIFFS will be declared in default.

46.     Such determination by HUD was made, despite the clear record that demonstrated that HUD was unable to deliver title in accordance with federal law, and the failure to do so was the sole reason for the adjournment of the various scheduled closing dates.

47.     Prior to the third scheduled closing date, HUD still was unable to deliver title in accordance with federal law.

48.     Despite the continued failure of HUD to comply with federal law, and in an effort to secure title to the property, ALMEIDA was fully prepared to cooperate with HUD and explore other methods, such as insurance and an agreement of indemnification, to permit the closing to

move forward.

49.    Despite ALMEIDA's efforts, HUD unreasonably and without even a reasonable basis refused to permit the closing to move forward in part because Joseph appropriately insisted on the title defects being properly removed.

50.    HUD was not prepared, and was unable to deliver title in accordance with federal law prior to, or during each and every scheduled closing date even though ALMEIDA was fully prepared to close on or before each and every scheduled closing date.

51.    As a result of HUD's threat to enter a default against the PLAINTIFFS, Joseph commenced an action in the United States District Court for the Southern District of New York, entitled, Jaison Joseph v. John Carro, et. al., 02-CV-6133 (CLB) seeking a declaratory judgment and injunction to (a) challenge HUD's right to declare PLAINTIFFS in default and (b) to require HUD to fully perform under the previously agreed upon agreement.

52.    On or about September 20, 2002, a "Stipulation of Settlement and Dismissal" was entered into by and between the PLAINTIFFS and HUD.

53.    In accordance with the "Stipulation of Settlement and Dismissal", among other things, a fourth closing date of October 4, 2002 was agreed upon by all parties.

54.    Furthermore, Joseph expressly agreed to assign to ALMEIDA any and all claim or interest he may have, or any silent partner of his may have, in the bid for Tappan Zee Manor, which was submitted to HUD's foreclosure commissioner on April 26, 2002, and any and all claims or interest in any and all extension fees paid to HUD since April 26, 2002, and any and all rights he or any silent partner of his may have under federal, state or local law to recover same.

55.    On or about October 4, 2002, the closing of the Tappan Zee Manor property took place, and title was conveyed and passed.

56.    The undue delays and the demand for payment of extension fees were caused solely and as a direct result of the actions by HUD, and were based in no part on the actions or inactions of the PLAINTIFFS.

57.    Had HUD complied with the appropriate federal laws and the various agreements, the closing would have occurred in accordance with the general foreclosure sale procedures, federal and state law, and pursuant to the agreements of the parties.

58.    The failure of HUD to convey the title to Tappan Zee Manor to the PLAINTIFFS at the agreed upon time was a direct breach by HUD of the "Terms and Requirements of Foreclosure Sale-Acknowledgement of Bidder," the "Foreclosure Sale" Agreement, the intention of all the parties, the anticipated practice of all the parties and existing federal law.

59.    The PLAINTIFFS fully performed its obligations under the various agreements with HUD, as ALMEIDA was fully able, willing and prepared to close prior to the time that HUD finally could deliver and convey the title under federal law.

60.    HUD failed to perform its obligations under the various agreements and in accordance with federal law, and therefore, breached the aforementioned agreements.

61.    As a result of the foregoing, the PLAINTIFFS conferred a benefit upon HUD and HUD obtained a benefit without adequately compensating the PLAINTIFFS, and more specifically unjustly demanded that the PLAINTIFFS pay to HUD "extension" fees even when HUD was not prepared to close as it was in violation of federal law and could not deliver and/or convey title to Tappan Zee Manor.

62.    Furthermore, as a result of the foregoing, the PLAINTIFFS acted in good faith; HUD accepted the actions of the PLAINTIFFS relative to the foreclosure sale and transaction; and the PLAINTIFFS expected that HUD would convey title to Tappan Zee Manor in a timely fashion as

agreed, and in accordance with law.

63.    That on or about February 6, 2008, the PLAINTIFFS caused to be served and filed upon

HUD a demand for payment, setting forth the time and date of the violations of the

PLAINTIFFS' rights by HUD, the nature and factual allegations of such violations by HUD, and

the total amount of money damages owed to the PLAINTIFFS by HUD.

64.    On or about February 14, 2008, HUD denied the request for payment, and otherwise

denied PLAINTIFFS claim.

## AS AND FOR A FIRST CLAIM
## ON BEHALF OF PLAINTIFFS AGAINST THE DEFENDANTS
### *(National Housing Act & Multifamily Mortgage Foreclosure Act)*

65.    PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in

Paragraphs numbered "1" through "64" with the same force and effect as if more fully set forth

herein at length.

66.    By reason of the foregoing, and as a proximate result thereof, PLAINTIFFS have been

damaged in the amount one hundred sixty three thousand four hundred thirty eight dollars and no

cents ($163,438.00) together with interest, costs, fees, attorney's fees and for such other and

further relief, as this Court deems just, proper and appropriate.

## AS AND FOR A SECOND CLAIM
## ON BEHALF OF PLAINTIFFS AGAINST THE DEFENDANTS
### *(Breach of Contract of the Foreclosure Sale Agreement)*

67.    PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in

Paragraphs numbered "1" through "66" with the same force and effect as if more fully set forth

herein at length.

68.    By reason of the foregoing, and as a proximate result thereof, PLAINTIFFS have been

damaged in the amount one hundred sixty three thousand four hundred thirty eight dollars and no

cents ($163,438.00) together with interest, costs, fees, attorney's fees and for such other and further relief, as this Court deems just, proper and appropriate.

## AS AND FOR A THIRD CLAIM

## ON BEHALF OF PLAINTIFFS AGAINST THE DEFENDANTS

### (Breach of Contract of the Terms and Requirements
### of Foreclosure Sale-Acknowledgement of Bidder)

69.    PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in Paragraphs numbered "1" through "68" with the same force and effect as if more fully set forth herein at length.

70.    By reason of the foregoing, and as a proximate result thereof, PLAINTIFFS have been damaged in the amount one hundred sixty three thousand four hundred thirty eight dollars and no cents ($163,438.00) together with interest, costs, fees, attorney's fees and for such other and further relief, as this Court deems just, proper and appropriate.

## AS AND FOR A FOURTH CLAIM

## ON BEHALF OF PLAINTIFFS AGAINST THE DEFENDANTS

### (Quantum Meruit)

71.    PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in Paragraphs numbered "1" through "70" with the same force and effect as if more fully set forth herein at length.

72.    By reason of the foregoing, and as a proximate result thereof, PLAINTIFFS have been damaged in the amount one hundred sixty three thousand four hundred thirty eight dollars and no cents ($163,438.00) together with interest, costs, fees, attorney's fees and for such other and further relief, as this Court deems just, proper and appropriate.

## AS AND FOR A FIFTH CLAIM

## ON BEHALF OF PLAITNIFFS AGAINST THE DEFENDANTS

### *(Unjust Enrichment)*

73.    PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in Paragraphs numbered "1" through "72" with the same force and effect as if more fully set forth herein at length.

74.    By reason of the foregoing, and as a proximate result thereof, PLAINTIFFS have been damaged in the amount one hundred sixty three thousand four hundred thirty eight dollars and no cents ($163,438.00) together with interest, costs, fees, attorney's fees and for such other and further relief, as this Court deems just, proper and appropriate.

## AS AND FOR A SIXTH CLAIM

## ON BEHALF OF PLAINTIFFS AGAINST THE DEFENDANTS

### *(Federal Tort Claims Act)*

75.    PLAINTIFFS repeat, reiterate and reallege each and every allegation contained in Paragraphs numbered "1" through "74" with the same force and effect as if more fully set forth herein at length.

76.    That the aforementioned actions of HUD constitute violations of the National Housing Act, Multi-Family Mortgage Foreclosure Act, breach of contract, *quantum meruit* and unjust enrichment all in violation of the Federal Tort Claims Act.

77.    That the aforementioned actions of HUD give rise to separate and distinct claims pursuant to the Federal Tort Claims Act which are separate and apart from the claims raised in the foregoing FIRST, SECOND, THIRD, FOURTH and FIFTH claims raised herein.

78.    By reason of the foregoing, and as a proximate result thereof, PLAINTIFFS have been

13

damaged in the amount one hundred sixty three thousand four hundred thirty eight dollars and no cents ($163,438.00) together with interest, costs, fees, attorney's fees and for such other and further relief, as this Court deems just, proper and appropriate.

### DEMAND FOR TRIAL BY JURY

The Plaintiff hereby demands a trial by jury as to each and every claim so permitted by law.

**WHEREFORE,** the PLAINTIFFS respectfully request that this Court:

a.)     declare that the defendants violated the National Housing Act, Multi-Family Mortgage Foreclosure Act of 1981 and the Federal Tort Claims Act;

b.)     declare that the defendants violated the various agreements entered into between the parties;

c.)     enter judgment in favor of the PLAINTIFFS and against the defendants on the FIRST, SECOND, THIRD, FOURTH, FIFTH and SIXTH CLAIMS;

d.)     award damages in the amount of one hundred sixty three thousand four hundred thirty eight dollars and no cents ($163,438.00) in favor of the PLAINTIFFS and against the defendants;

e.)     award costs and attorney's fees;

f.)     award pre and post judgment interest;

g.)     and award the PLAINTIFFS with such other and further relief as this Court deems just, proper and appropriate.

**Dated:**      **April 29, 2008**
           **White Plains, New York**

Yours, etc.,

**LYNCH SCHWAB, PLLC**

**BY:**

**LOUIS U. GASPARINI**
**LG 2655**
**Attorneys for the Plaintiffs**
75 South Broadway
Fourth Floor
White Plains, NY 10601
(914) 304-4353

15